# IN THE COURT OF APPEALS OF IOWA

No. 19-0924
Filed January 21, 2021

**STATE OF IOWA,**
　　　Plaintiff-Appellee,

**vs.**

**OLEAF TEOH,**
　　　Defendant-Appellant.
_____

Appeal from the Iowa District Court for Polk County, Jeffrey D. Farrell, Judge.

Oleaf Teoh appeals after a jury found her guilty of vehicular homicide, leaving the scene of an accident resulting in death, and malicious prosecution. **CONVICTIONS AFFIRMED IN PART, REVERSED IN PART, AND CASE REMANDED.**

Kelsey L. Knight of Carr Law Firm, P.L.C., Des Moines, for appellant.

Thomas J. Miller, Attorney General, and Timothy M. Hau, Assistant Attorney General, for appellee.

Considered by Doyle, P.J., Greer, J., and Carr, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2021).

**CARR, Senior Judge.**

Oleaf Teoh appeals after a jury found her guilty of vehicular homicide, leaving the scene of an accident resulting in death, and malicious prosecution. She challenges the trial court's evidentiary rulings and the sufficiency of the evidence supporting her convictions.

Teoh's convictions stem from the death of Matthew Otto, who was killed when a vehicle struck him while he was crossing the street at around 9:00 p.m. on February 25, 2018. A woman, who was outside her home at the time, heard the collision and saw the vehicle head to a parking lot before stopping to let the passengers out. The woman then watched as Officer Zachary Vanderploeg stopped the same vehicle, a blue Toyota RAV4.

Officer Vanderploeg was responding to a call about the hit-and-run when he noticed a blue Toyota RAV4 with heavy damage to its passenger-side front end and windshield. Although the dispatch first reported that the vehicle involved in the hit-and-run was red, the officer stopped the RAV4 based on its proximity to the crime scene. The driver, later identified as Teoh,[1] told the officer that she had been in an accident with another vehicle. The officer smelled the odor of alcoholic beverage on Teoh's breath. But because the vehicle did not match the description of the vehicle involved in the hit and run, Officer Vanderploeg let Teoh leave.

After further investigation, officers realized they were looking for the driver of the RAV4. An officer reported the license plate number to dispatch when the

---

[1] In identifying herself to police, Teoh first provided another woman's name, address, phone number, and date of birth. Police did not learn Teoh's true identity until she was fingerprinted at the jail.

vehicle was stopped, and a search of the license plate number revealed that the registered owner was Paul Nimely, Teoh's uncle. Officers located the vehicle outside Nimely's apartment and found blood and tissue on the vehicle's passenger side and roof. Teoh was inside Nimely's apartment.

Officers took Teoh into custody. Teoh failed field sobriety tests, and a chemical test administered two hours after the collision showed Teoh's blood alcohol content was 0.195. Samples of the blood and tissue found on the RAV4 matched Otto's DNA profile. Forensic testing also revealed that at the time of the collision, the vehicle was traveling at a speed of over sixty miles per hour, more than twice the speed limit.

## I. Admissibility of the Evidence.

Teoh first challenges three of the 161 exhibits the State entered into evidence. Before the start of trial, Teoh moved in limine to exclude three photographs of Otto's injuries she alleges "are grisly and graphic in nature." The motion argued the court should exclude the photographs from evidence because (1) testimony from the medical examiner could describe Otto's injuries and establish the cause of his death, (2) proof of Otto's injuries was not an element of any of the offenses charged, and (3) the graphic nature of the evidence would "simply appeal to the jury's emotion and instinct to punish." The trial court denied the motion, ruling definitively that the exhibits "may be admitted during the course of trial."

We review evidentiary rulings for an abuse of discretion. *State v. Heard*, 934 N.W.2d 433, 439 (Iowa 2019). The question is whether the evidence is relevant, and if so, whether its probative value is substantially outweighed by the

danger of unfair prejudice. *See State v. Wells*, 629 N.W.2d 346, 355 (Iowa 2001). "Evidence is relevant if it makes the existence of a consequential fact more or less probable." *Id.* at 356. "Recognizing that [w]ise judges may come to differing conclusions in similar situations, we give much leeway [to] trial judges who must fairly weigh probative value against probable dangers." *State v. Price*, 692 N.W.2d 1, 3 (Iowa 2005) (alterations in original) (citation omitted). This leeway extends to determinations of whether the value of the photographic evidence outweighs its grisly nature. *See State v. Armstrong*, 376 N.W.2d 635, 637 (Iowa Ct. App. 1985) ("Trial courts have discretion in determining whether the value of pictures as evidence outweighs their grisly nature.").

We begin by noting that photographs are not inadmissible "simply because they are 'gruesome or may tend to create sympathy . . . if there is just reason for their admission.'" *State v. Neiderbach*, 837 N.W.2d 180, 202 (Iowa 2013) (alteration in original) (citation omitted). Teoh argues that, unlike cases addressing the admissibility of photos of the deceased in murder cases, the State did not have to prove the serious nature of Otto's injuries and the cause of death was not in dispute. But one of the two counts of vehicular homicide the State charged Teoh with was under the theory that she was "[d]riving a motor vehicle in a reckless manner with willful or wanton disregard for the safety of persons or property." Iowa Code § 707.6A(2)(a) (2018). The exhibits were relevant to the jury's resolution of that issue. *See, e.g.*, *Guillen v. State*, 189 So. 3d 1004, 1012 (Fla. Dist. Ct. App. 2016) (concluding photographs of victim's head with open wound and blood "were relevant to demonstrate the extent of the damage caused by the crash and to corroborate the defendant's speed of travel upon impact" in vehicular homicide

prosecution); *People v. Head*, 917 N.W.2d 752, 762 (Mich. Ct. App. 2018) (holding photographs of child victim in fatal shooting relevant to show "the powerful nature of the short-barreled shotgun and were thus probative of defendant's gross negligence and recklessness in storing this loaded, deadly weapon in a place that was readily accessible to his unsupervised children"); *State v. Bettencourt*, 723 A.2d 1101, 1108 (R.I. 1999) (concluding graphic photographic evidence depicting victims hit by defendant's truck was "more probative than prejudicial and may have helped the jury to conclude that under the circumstances, the truck was traveling at an excessive and reckless speed"); *State v. Larson*, 582 N.W.2d 15, 21 (S.D. 1998) (finding photographs of two highway construction workers killed when struck by a motor vehicle were relevant to show force and impact and therefore probative of the defendant's recklessness). The exhibits were also relevant to help the jury visualize the medical examiner's testimony. *See State v. Plowman*, 386 N.W.2d 546, 550 (Iowa Ct. App. 1986) (noting autopsy photos may help to "illustrate the medical testimony and [make] it comprehensible for the jury"). And the photos from Otto's autopsy are no more inflammatory than photos from the crime scene that were in evidence. *See State v. Allen*, 348 N.W.2d 243, 247 (Iowa 1984) (finding photos "of the victim's body after it had been cleaned of blood and prior to the autopsy" were far less gruesome than the crime scene photos admitted into evidence without objection). For these reasons, we find no abuse of discretion.

**II. Sufficiency of the Evidence.**

We turn then to the sufficiency of the evidence supporting Teoh's convictions. We review these claims for correction of legal error. *See State v. Schiebout*, 944 N.W.2d 666, 670 (Iowa 2020). The question is whether, viewing

the evidence in the light most favorable to the State, substantial evidence supports the convictions. *See id.* Substantial evidence is evidence that can convince a rational jury that the defendant is guilty beyond a reasonable doubt. *See id.*

The jury found Teoh guilty of vehicular homicide by operating while intoxicated. *See* Iowa Code § 707.6A(1). The court instructed the jury that to find Teoh guilty, the State had to prove that she was driving a motor vehicle while having a blood alcohol concentration of .08 or more and unintentionally caused Otto's death. Teoh argues there is insufficient evidence to show she was drinking before the collision. She notes that Officer Vanderploeg allowed her to leave after speaking to her near the scene. She also notes that despite the officer's claim at trial that he smelled the odor of alcoholic beverage at the time of the stop, he did not include that observation in his report and observed no other signs of impairment.

Substantial evidence supports a finding that Teoh operated a motor vehicle while intoxicated. Teoh failed all field sobriety tests while in custody, and a breath test administered two hours after the collision showed her blood alcohol level was more than twice the legal limit. Although Teoh's counsel argued that the State could not show she did not consume alcoholic beverages after striking Otto, Nimely testified that Teoh did not drink after returning to his apartment. Given the small amount of time between the collision and Teoh's return to Nimely's apartment, the high blood alcohol level two hours after the collision, and the officer's testimony about the odor of alcoholic beverage on Teoh shortly after the collision, the jury could find Teoh was driving while intoxicated.

The jury also found Teoh guilty of vehicular homicide by reckless driving. *See id.* § 707.6A(2)(a). The court instructed the jury that to find Teoh guilty on this charge, the State had to prove that Teoh drove a motor vehicle in a reckless manner and her driving unintentionally caused Otto's death. As for the first element, the court instructed the jury:

> A person is "reckless" or acts "recklessly" when she willfully disregards the safety of persons or property. It is more than a lack of reasonable care which may cause unintentional injury. Recklessness is conduct which is consciously done with willful disregard of the consequences. For recklessness to exist, the act must be highly dangerous. In addition, the danger must be so obvious that the actor knows or should reasonably foresee that harm will more likely than not result from the act. Though recklessness is willful, it is not intentional in the sense that harm is intended to result.

Teoh argues there is insufficient evidence to show she drove recklessly because the State only produced evidence that she had been speeding. She notes that violating a traffic law is insufficient evidence of recklessness. *See State v. Klatt*, 544 N.W.2d 461, 463 (Iowa Ct. App. 1995) ("Our supreme court has clearly held a violation of a rule of the road is not by itself enough to prove recklessness."). But Teoh did not commit a mere technical violation of the law; she was driving the vehicle at twice the speed limit, an act that shows a reckless disregard for the safety of others. *Compare State v. Cox*, 500 N.W.2d 23, 26 (Iowa 1993) (holding State failed to establish defendant was driving in a reckless manner by failing to stop and yield without evidence that defendant was speeding or driving in an erratic manner), *and Klatt*, 544 N.W.2d at 463 (holding State failed to prove defendant was driving in a reckless manner based solely on his attempt to pass in a no-passing zone), *with State v. Atwood*, 602 N.W.2d 775, 784 (Iowa 1999) (finding substantial evidence of reckless driving where estimates put defendant's speed

between fifty and one-hundred miles per hour on a road with a speed limit of thirty-five miles per hour), *and State v. Abbas*, 561 N.W.2d 72, 74 (Iowa 1997) (finding substantial evidence of reckless driving where defendant was speeding up to ninety miles per hour and illegally trying to pass vehicles with obscured visibility). A reasonable jury could find Teoh was driving recklessly.

Teoh also contests the evidence showing her conduct was the proximate cause of Otto's death, as required to convict her on either count of vehicular homicide. She argues the evidence shows the collision occurred at night on a poorly lit stretch of road, that there were slick patches of road, and that Otto was under the influence of drugs and may have been looking at his phone. But the evidence shows that Teoh accelerated her speed before striking Otto, showing her lack of awareness of or reaction to his presence. And an officer with training in traffic crash investigation and reconstruction testified that both an increased rate of speed and intoxication impairs a person's ability to perceive, react, and stop a motor vehicle. A reasonable jury could find Teoh's intoxication, recklessness, or both caused Otto's death.

Teoh also challenges her conviction of leaving the scene of an accident resulting in death. *See* Iowa Code §§ 321.261(4), .263. She claims there is insufficient evidence to show she was aware the accident caused a person's injury or death, suggesting that because the collision occurred in a wooded area, it was reasonable to believe she struck a deer instead. But her actions following the collision—lying to police about her identity, claiming the damage to the vehicle occurred in a collision with another vehicle rather than an animal, admitting to seeing Otto lying in the grass but claiming another vehicle struck him—undercut

her claim. Substantial evidence supports Teoh's conviction for leaving the scene of an accident resulting in death.

Finally, Teoh contends there is insufficient evidence to support her conviction for malicious prosecution. *See id.* § 720.6. The court instructed the jury that the State had to prove Teoh caused or attempted to cause another to be indicted or prosecuted for a public offense without reasonable grounds to believe that the person committed the offense. The State charged Teoh with malicious prosecution because Teoh claimed another woman's identity from her initial contact with police officers until she was fingerprinted at the jail. But the evidence does not support a finding that Teoh did so to cause the person whose name she gave to be indicted or prosecuted. Nor is there any likelihood that the other woman would have been prosecuted; had Teoh's deception continued, the State would have prosecuted Teoh under the name given. *See* Iowa R. Crim. P. 2.8(1) ("The defendant must be informed that if the name by which the defendant is indicted or informed against is not the defendant's true name, the defendant must then declare what the defendant's true name is, or be proceeded against by the name in the indictment."). There is insufficient evidence to support Teoh's conviction for malicious prosecution. We reverse that conviction and remand for dismissal of the charge. The trial court merged Teoh's convictions for vehicular homicide by reckless driving and leaving the scene into her conviction for vehicular homicide by operating while intoxicated and sentenced her to the mandatory sentence on the greater charge. We sever the judgment and sentence for malicious

prosecution and allow her sentence for vehicular homicide to stand. *See State v. Nall*, 894 N.W.2d 514, 525 (Iowa 2017).

**CONVICTIONS AFFIRMED IN PART, REVERSED IN PART, AND CASE REMANDED.**